IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:05CR3011 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| ROBERT POPEJOY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Magistrate Judge's Recommendation (filing 56), stated orally at the conclusion of the suppression hearing, that defendant Robert Popejoy's motion to suppress (filing 42) be denied. The defendant has filed objections to the Recommendation (filing 63), filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3. For the reasons discussed below, I shall adopt the Magistrate Judge's Recommendation, deny the defendant's objections, and deny the defendant's motion to suppress.

The defendant objects to the Magistrate Judge's Recommendation, arguing that (1) probable cause did not support issuance of the search warrant, and the warrant cannot be "saved" by the good-faith exception of United States v. Leon, 468 U.S. 897 (1984), because the affidavit submitted in connection with the search-warrant request was "so lacking in indicia of probable cause as to render the deputy's reliance on it objectively unreasonable" (Filing 63, at 7); and (2) sheriff's deputies did not act reasonably under the Fourth Amendment[1] when they executed the search warrant at

---

[1]The defendant correctly admits that 18 U.S.C. § 3109, the federal statute codifying the knock-and-announce rule, does not apply here because this case involves a state search warrant executed by state officers. (Filing 63, at 3.) United States v. Scroggins, 361 F.3d 1075, 1080 (8th Cir. 2004) (§ 3109 does not apply to searches conducted entirely by state officers pursuant to state warrant; in any event, § 3109 and Fourth Amendment codify same common-law principle, making them

the defendant's residence[2] because although the deputies knocked and announced their presence, they did not wait long enough before forcing the defendant's front door open.  I am not persuaded by either of these arguments.

## Probable Cause and Leon

I agree with Magistrate Judge Piester that the affidavit and application for search warrant (Filing 54, Ex. 1) were inadequate to provide probable cause to support the search warrant.  However, as stated by Judge Piester, the <u>Leon</u> good-faith exception saves the seized evidence in this case from suppression.

An officer's good faith is measured by whether the officer's reliance on the warrant was objectively reasonable.  "Stated another way, the inquiry is whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."  <u>United States v. Scroggins</u>, 361 F.3d 1075, 1083 (8th Cir. 2004) (internal quotation marks and citations omitted).  "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . .  Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."  <u>United States v. Leon</u>, 468 U.S. 897, 921 (1984).

The application for search warrant in this case sought evidence of marijuana possession in the Popejoy residence.  The affidavit in support of the application is a

---

coextensive and subject to the same exceptions).

[2]The residence was located in Hiawatha, Kansas, and was shared by Tammie Frederick and defendant Popejoy at the relevant time.  The government concedes that Popejoy has standing to challenge the search in this case.  (Filing 59, Suppression Hrg. Tr. 3:3-12 (hereinafter "Tr.").)

transcribed recording[3] of the sworn testimony of Deputy Sheriff Koerperich and Sheriff Shoemaker, who were questioned by Brown County, Kansas, Attorney Kevin Hill on October 8, 1999, before District Judge J.D. Euler at his residence.  At this hearing, Koerperich testified that earlier that evening he found a marijuana seed in trash sitting near Popejoy's residence, as well as paperwork containing the names of others who lived in the house.  Based on their training and experience, Koerperich, two other deputies, and the sheriff all agreed that the seed found by Koerperich was indeed a marijuana seed.   Sheriff Shoemaker testified that the Brown County, Kansas, Sheriff's Office had "three years of information, as far as usage and even distribution, with Mr. Popejoy and Ms. Frederick. . . . We've had informants, and even some family, which have expressed concerns in that they actually did use methamphetamine."  Shoemaker testified that this series of informants had proven reliable in the past.  Shoemaker also stated that a file from the Richardson County, Nebraska, Sheriff's Office—which was provided to him when Ms. Frederick first located in Hiawatha two years prior—created "strong suspicion for use of methamphetamine and marijuana" and showed that "they were on probation out of Nebraska." (Filing 54, Ex. 1.)

After Koerperich found the suspected marijuana seed in the trash, he and Sheriff Shoemaker presented their information to the county attorney, who prepared the paperwork. Sheriff Shoemaker testified at the suppression hearing that the normal procedure for getting a search warrant in Brown County, Kansas, is to present information to the county attorney who determines if "there's enough" to get a warrant.  Once that determination is made, the judge is contacted. (Tr. 89.)  In this case, County Attorney Hill did not express any hesitation in applying for a search warrant, as he had in various instances in the past.

---

[3]Sheriff Shoemaker testified that recorded affidavits are a common procedure in Kansas. (Tr. 67:25-68:5.)

3

After County Attorney Hill completed the necessary paperwork, Koerperich, Shoemaker, and Hill then went to Judge Euler's Hiawatha home around 11:59 p.m. in an attempt to get a search warrant for the Popejoy residence. After listening to the testimony, Judge Euler signed the search warrant, which was executed that same night. Koerperich and Shoemaker testified that neither the county attorney nor the judge expressed any doubt about the validity of the warrant or the lack of probable cause, and that Judge Euler did not ask any questions during the hearing in his home, as he had in other instances.

It was entirely reasonable for the deputies to execute the search warrant on Popejoy's residence in good-faith reliance on the validity of the warrant—a warrant that was issued after hearing testimony that law-enforcement officials in two states suspected drug activity by Frederick and Popejoy in both Nebraska and Kansas, that reliable informants and family members suspected such drug use, and that deputies found evidence (though admittedly scant) of drug use in Popejoy's trash. This information was reviewed by the sheriff, county attorney, and judge, none of whom expressed doubt about the existence of probable cause or indicated that this was a "borderline" case. See United States v. Johnson, 78 F.3d 1258, 1264 (8th Cir. 1996) (seeking advice of county attorney before requesting search warrant can be factored into determining whether officer's conduct is objectively reasonable). Under these circumstances, I cannot say that the affidavit in support of the search warrant was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Warford, 2006 WL 522210, at *3 (8th Cir. Mar. 6, 2006) (quoting United States v. Leon, 468 U.S. 897, 923 (1984)). See also Leon, 468 U.S. at 921 (in the ordinary case, "an officer cannot be expected to question the magistrate's probable-cause determination"); Scroggins, 361 F.3d at 1084 ("The exclusionary rule's purpose is deterrence. That purpose would not be served by excluding evidence when, as here, the police take a close call to a judge before searching, even if a reviewing court ultimately concludes that the judge got it wrong.").

## Knock-and Announce Procedure

The defendant argues that the sheriff's deputies did not act reasonably under the Fourth Amendment when they executed the search warrant at Popejoy's residence because the deputies did not wait long enough before forcing the defendant's front door open.

> Under the fourth amendment's so-called "knock-and-announce" principle, whether police officers have waited long enough after knocking to infer that they have been constructively denied admittance, and thus may enter, "does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant.

United States v. Vesey, 338 F.3d 913, 915 (8th Cir. 2003) (citations omitted).  A court's reasonableness inquiry under the Fourth Amendment is flexible, "and the suspected presence of drugs in the place to be searched has been held to lessen the time that police officers are required to wait."  Id.

At the suppression hearing before the Magistrate Judge, Sheriff Shoemaker and Deputy Sheriff Koerperich testified that they were two of the state officers who executed the search warrant at Popejoy's residence on October 9, 1999.  The men testified that the warrant at issue in this case was executed pursuant to standard operating procedure for serving search warrants on residences, a procedure that was developed in 1997, is repeatedly practiced in training exercises,  and is still followed today.  (Tr. 60:11-62:18; 66:12-67:8; 73:24-74:11.)

After the judge signed the search warrant for Popejoy's residence, Shoemaker and Koerperich returned to the sheriff's office, gathered assistance, drove six or seven blocks to Popejoy's residence in a caravan of three to four cars, parked somewhere

in front of the house, and approached the residence quietly. The deputies arrived at the residence at approximately 12:45 a.m. (Tr. 41:5-42:9; 52:3-11.) Koerperich, the designated "knocker," continuously knocked on the front door of the residence and loudly yelled, "sheriff's office, search warrant, open the door" three times. (Tr. 44:13-48:20.) Koerperich and Shoemaker both testified that "five to ten seconds" elapsed from the time Koerperich started knocking until the deputies entered Popejoy's residence. (Tr. 47:17-19; 76:3-9; 84:2-22.)[4]

Tammie Frederick, who shared the house with Popejoy at the relevant time, testified that their frame house was "little" with two bedrooms, a living room, dining room, kitchen, and one bathroom on a single level. Frederick testified that a person walking into their house could see every room in the house from the front door. (Tr. 8:1-9:3.) At the time the officers knocked on the front door, Frederick was awake and lying on the couch, which was five feet from the front door; the television set was on in one of the bedrooms; and Frederick had just turned off all the lights. (Tr. 10:1-24; 13:5-7; 18:18-23.) Frederick said she did not have a "normal" bedtime; that she usually got tired between 11:00 and 12:00 midnight; and that when Popejoy spent the night at the residence during the October 1999 time frame, she "do[es]n't think [they] slept" and they were "[p]robably" using methamphetamine. (Tr. 18:24-19:3; 22:3-10.)

_____

[4]During cross-examination, defense counsel gave Koerperich a wristwatch and asked Koerperich to time how long it took to say, "sheriff's office, search warrant, open the door" three times. In court, it took Koerperich four seconds to repeat this phrase three times. (Tr. 55:1-56:6.) Koerperich then affirmatively answered defense counsel's follow-up questions, "So start of the pounding and announcement to the end of the pounding and announcement, four seconds. Correct? . . . And entry at four seconds?" (Tr. 56:2-6.) I find Koerperich's testimony on direct examination that the officers waited five to ten seconds before entering the house more credible than the four-second estimate made as the result of an in-court test that in no way resembled the circumstances on October 9, 1999. Further, Koerperich's five- to ten-second testimony was corroborated by Sheriff Shoemaker.

I agree with Magistrate Judge Piester that the officers' entry into Popejoy's residence five to ten seconds after they began alerting the occupants to their presence by knocking and announcing their identity and purpose was constitutionally reasonable. This is especially so "given the risk of destruction of evidence usually present in drug trafficking investigations, the relatively modest size of the home that an occupant would have to traverse to answer the door," and the possibility that Frederick and Popejoy would be awake at the time of the search given their sleep habits. See United States v. Morris, 436 F.3d 1045, 1049 (8th Cir. 2006) (stating that the "reasonableness of a delay by police after announcing their presence varies with the circumstances of each search"; court considered risk of evidence destruction, size of home, and likelihood that occupants would be awake in deciding whether ten seconds was reasonable time for officers to wait between knocking and forcefully entering home); Vesey, 338 F.3d at 916 (ten-second delay before officers forced apartment door open was reasonable under Fourth Amendment when officers knocked, twice yelled, "Police department, search warrant, open the door," and waited; given small size of apartment, officers' arrival in the afternoon, the lack of verbal response from the occupants, and suspected presence of drugs, Fourth Amendment rights were not violated); United States v. Streeter, 907 F.2d 781, 788-89 (8th Cir. 1990) (no violation of 18 U.S.C. § 3109 in case where officers knocked on door and identified themselves and their purpose for five to ten seconds before forcible entry), overruled on other grounds, United States v. Wise, 976 F.2d 393, 401 (8th Cir. 1992).

Magistrate Judge Piester's reasonableness determination is also bolstered by the fact that the deputies in this case, acting on what they believed to be a valid search warrant, were attempting to comply with an established and rehearsed departmental procedure regarding "knock-and-announce" entries that is still followed today. While the officers may have pushed the envelope of reasonableness in this case, they still attempted to comply with procedures they were trained to, and repeatedly did, perform. See United States v. Leon, 468 U.S. 897, 919-20 (1984) (where officer's

conduct is objectively reasonable, excluding evidence does not further deterrent effect of exclusionary rule).

Even if the deputies' entry into Popejoy's residence was unreasonable within the meaning of the Fourth Amendment, the evidence found within Popejoy's house need not be suppressed because the illegal entry did not contribute to the discovery of evidence seized under the warrant, which was issued based on information from sources completely unrelated to the entry. Segura v. United States, 468 U.S. 796, 805 & 814 (1984) (exclusionary rule inapplicable where government learns of evidence from independent source; information possessed by agents before entry into apartment constituted independent source for discovery and seizure of challenged evidence).

## Conclusion

Because I have found both of the defendant's objections to the Magistrate Judge's Recommendation to be without merit, I shall adopt the Magistrate Judge's Recommendation and deny the defendant's objections and motion to suppress.

Accordingly,

IT IS ORDERED:

1.     The Magistrate Judge's Recommendation (filing 56) is adopted;

2.     The defendant's objections to the Recommendation (filing 63) are denied; and

3.     The defendant's motion to suppress (filing 42) is denied.

8

March 28, 2006.

                                        BY THE COURT:
                                        s/ *Richard G. Kopf*
                                        United States District Judge